Rosen, Kantrow & Dillon, PLLC
*Counsel to Debtor In Possession*
38 New Street
Huntington, New York 11743
631 423 8527
Avrum J. Rosen

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT | **RETURN DATE: 4/26/2018** |
| EASTERN DISTRICT OF NEW YORK | **TIME: 3:30 p.m.** |

------------------------------------------------------------------x

In re:

    84 ELTON LLC,

                      Debtor.

------------------------------------------------------------------x

THE ESTATE OF RAFAEL RODRIGUEZ,
GEORGE RODRIGUEZ, and
PULASKI STREET CORP.,

                      Plaintiffs,

    -against-

KONITZ I INC.; SHABSI PFEIFFER, individually,
and in his capacity as an officer of Konitz I Inc.;
RODRIGUEZ 319 & 321 CORP.; NAZRUL ISLAM,
individually and in his capacity as an officer of
Rodriguez 319 & 321 Corp.; 84 ELTON LLC;
B & H ASSOCIATES GROUP LLC; and
BERNARD NIEDERMAN, individually and as a
member of 84 Elton LLC and a member of
B & H Associates Group LLC,

                      Defendants.

------------------------------------------------------------------x

Chapter 7

Case No.: 18-40038-nhl

Adv. Pro. No. 18-1004-nhl

        **DEBTOR'S MOTION SEEKING SUMMARY JUDGMENT PURSUANT TO**
        <u>**RULE 7056 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**</u>

     84 Elton LLC, debtor and debtor-in-possession and a defendant in the above captioned adversary proceeding ("<u>Debtor</u>"), by and through its attorneys, Rosen, Kantrow & Dillon, PLLC, respectfully submits this as and for Debtor's motion for summary judgment ("<u>Motion</u>") in favor of Debtor as against plaintiffs: (i) the Estate of Rafael Rodriguez ("<u>Rodriguez Estate</u>"); (ii) George

Rodriguez ("George"); and (iii) Pulaski Street Corp. ("Pulaski Corp.") (collectively, "Plaintiffs") on all of Debtor's defenses to all claims in the complaint ("Complaint") improperly alleged against Debtor and states as follows:

## EXHIBITS

1. Debtor relies upon the following documents, all of which are annexed hereto, in support of this Motion:

   a. Deed to Pulaski Corp. - Exhibit "**A**";

   b. Rafael Rodriguez Death Certificate - Exhibit "**B**";

   c. Order Appointing Administrator - Exhibit "**C**;

   d. Deed to Rodriguez 319 & 321 Corp. - Exhibit "**D**;

   e. Deed to Debtor - Exhibit "**E**";

   f. Release of Claims - Exhibit "**F**";

   g. Complaint - Exhibit "**G**";

   h. Notice of Pendency - Exhibit "**H**";

   i. Debtor's Motion to Dismiss - Exhibit "**I**;

   j. Order transferring to Surrogates Court - Exhibit "**J**".

## JURISDICTION AND VENUE

2. This adversary proceeding relates to Debtor's above-captioned Chapter 11 bankruptcy proceeding pending in the United States Bankruptcy Court for the Eastern District of New York and is a "core proceeding" as that term is defined in *28 U.S.C. § 157(b)(2)(F), (H), and (O)*.

3. The statutory predicates for the relief sought herein are Rules 7001 *et seq*. of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule").

4.  Venue of Debtor's Chapter 11 case and of this adversary proceeding in this district is proper under *28 U.S.C. §§ 1408 and 1409*.

## PARTIES

5.  Upon information and belief, Rafael Rodriguez ("Mr. Rodriguez") was a resident of the State of New York, who passed away in 2010 and was the sole shareholder of Pulaski Corp. The Rodriguez Estate is a legal entity created under operation of law to liquidate and administer the assets of Mr. Rodriguez, after his death.

6.  Upon information and belief, George Rodriguez was and is a resident of the State of New York, who resides at 383 Pulaski Street, Brooklyn, New York 11206. Rodriguez, upon information and belief, is an heir of the Rodriguez Estate.

7.  Upon information and belief, Pulaski Street Corp. was a New York domestic business entity, incorporated pursuant to the laws of New York, and is no longer active.

8.  Debtor is a New York Corporation, with its corporate office located at 5904 18th Avenue, Suite 48, Brooklyn, New York 11204 and its physical asset located at 321 Pulaski Street, Brooklyn, New York 11216. Debtor is a single asset real estate entity.

## UNDISPUTED FACTUAL BACKGROUND

9.  By the Statement of Undisputed Facts ("7056 Statement") under Rule 56(c)(1) of the Federal Rules of Civil Procedure ("Federal Rules"), applicable in this adversary proceeding under Bankruptcy Rule 7056, Debtor respectfully submits the following facts are undisputed. The 7056 Statement shall be filed with the Court in conjunction with this Motion. Plaintiffs have failed to participate in any manner in this adversary proceeding, thus the 7056 Statement is not a jointly submitted statement.

10. On January 3, 2018 ("Petition Date"), Debtor commenced a voluntary petition for relief from its creditors under Chapter 11, Title 11, United States Code ("Bankruptcy Code"). Debtor is a Debtor in Possession; no trustee or creditors' committee has been appointed in this case.

11. Debtor is the fee simple owner of the real property commonly known as 321 Pulaski Street, Brooklyn, New York, identified under Block 1594, Lot 61, in the County of Kings ("Real Property"). The Real Property is a 20' x 100' lot, improved by a fully attached three (3) story, two (2) family residence, defined by 2,100 square feet of living space. The Real Property is not presently inhabited by any tenants.

12. Upon information and belief, as revealed in certain documents maintained by the New York City Department of Finance, which are publicly available on its Automated City Register Information System ("ACRIS"), on or about September 12, 1986, Mr. Rodriguez purchased the Real Property from Andrew Jackson and Martha Jackson, and held the Real Property in Fee Simple ownership.

13. Upon information and belief, as revealed in ACRIS, on or about April 5, 1994, Mr. Rodriguez transferred the Real Property to his solely held, single real estate entity, Pulaski Corp. Pulaski Corp. held title to the Real Property in Fee Simple ownership. A true and accurate copy of the deed transferring the Real Property from Mr. Rodriguez to Pulaski Corp. is annexed hereto as Exhibit "A".

14. Upon information and belief, on or about October 15, 2010, Mr. Rodriguez passed away. A true and accurate copy of the Certificate of Death issued on behalf of Mr. Rodriguez by The City of New York, Department of Health and Mental Hygiene is annexed hereto as Exhibit "B".

15. Upon information and belief, subsequent to Mr. Rodriguez's death, letters of administration were issued by the New York State Surrogates Court, County of Kings ("Surrogate Court"), to the Kings County Public Administrator, to oversee the Rodriguez Estate. On or about June 12, 2015, the Surrogate Court issued an Order: (i) revoking the Letters of Administration to the Public Administrator; and (ii) appointing Mr. Rodriguez's son, Ivan Rodriguez, as the administrator of the Rodriguez Estate. A true and accurate copy of the Surrogate Court Order is annexed hereto as Exhibit "C".

16. As revealed in certain documents maintained in ACRIS, on or about February 11, 2014, Rodriguez 319 & 321 Corp. purchased the Real Property from Pulaski Corp. George executed the deed conveying the Real Property to Rodriguez 319 & 321 Corp. on behalf of Pulaski Corp. Upon information and belief, Nazrul Islam is the sole owner of Rodriguez 319 & 321 Corp., who is also a defendant in this matter. A true and accurate copy of the deed conveying ownership of the Real Property to Rodriguez 319 & 321 Corp. is annexed hereto as Exhibit "D".

17. As revealed in certain documents maintained in ACRIS, on or about July 24, 2014, Debtor purchased the Real Property from Rodriguez 319 & 321 Corp. A true and accurate copy of the deed conveying ownership of the Real Property to Debtor is annexed hereto as Exhibit "E".

18. On or about August 19, 2014, George executed a release of claims ("Release"), whereby George released and waived any and all claims related to the Real Property, based upon the consideration he had previously received ($200,000.00 for the sale of the Real Property) and the new value ($10,500.00) he received for the Release. A true and accurate copy of the Release is annexed hereto as Exhibit "F".

19. Prior to the Petition Date, on or about January 26, 2017, Plaintiffs commenced the action styled *The Estate of Rafael Rodriguez, George Rodriguez, and Pulaski Street Corp.,*

*Plaintiffs against Konitz I Inc.; Shabsi Pfeiffer, individually, and in his capacity as an officer of Konitz I Inc.; Rodriguez 319 & 321 Corp.; Nazrul Islam, individually and in his capacity as an officer of Rodriguez 319 & 321 Corp.; 84 Elton LLC; B & H Associates Group LLC; and Bernard Niederman, individually and as a member of 84 Elton LLC and a member of B & H Associates Group LLC, Defendants*, previously pending in the Supreme Court of the State of New York, Kings County, Index No. 501730/2017 ("Supreme Court Action"), thereafter pending in the Surrogate Court of the State of New York, Kings County, File No. 2014-1605/C ("Surrogate Court Action"). A true copy of the Summons and Complaint is annexed hereto as Exhibit "G".

20. On January 27, 2017, Plaintiffs' filed a Notice of Pendency against the Real Property, as is evidenced at Exhibit "H".

21. Plaintiffs' commenced the Supreme Court Action, against, *inter alia*, Debtor, allegedly seeking to avoid the transfer of the Real Property from Pulaski Corp. to Rodriguez 319 & 321 Corp., and the subsequent transfer by Rodriguez 319 & 321 Corp. to Debtor. The complaint is based upon unsubstantiated, self-serving, conclusory allegations of fraud in the inducement and seeks to cancel the deed transfers, or, in the alternative, for a money judgment for the fair market value of the Real Property.

22. Debtor timely filed a motion seeking dismissal ("Motion to Dismiss") of the Supreme Court Action on April 30, 2017. Debtor sought dismissal of the Supreme Court Action against it, base *inter alia*: (i) upon the Release executed by George; (ii) George is not the sole heir of the Rodriguez Estate, nor is he the representative of the Rodriguez Estate, thus the Rodriguez Estate had no right to bring the action against Debtor. A true copy of the Motion to Dismiss, without exhibits, is annexed hereto as Exhibit "I".

23. On July 19, 2017, in the Supreme Court Action, Justice Wavny Toussaint entered an Order which "respectfully referred/transferred [the Supreme Court Action] to Surrogates Court, Kings County. This action is directly related to a matter pending in Surrogates Court, under index number 2014-1605." A true copy of the Supreme Court Order is annexed hereto as Exhibit "J".

## ARGUMENT

## STANDARD FOR GRANTING SUMMARY JUDGMENT

24. In an abundance of caution, Debtor respectfully requests that should this Court consider the prior Motion to Dismiss from the Supreme Court Action, that the Court deem such motion to be converted to a motion for summary judgment. The principles which apply to an application for summary judgment are well known: a court should grant summary judgment to a moving party when there are no genuine issues with regard to material facts in dispute. *Fed. R. Civ. P. 56(c)*; *see, also, In re Metro Affiliates, Inc.,* 2008 WL 656788 (Bankr. S.D.N.Y. 2008); *Hermes International v. Lederer de Paris Fifth Avenue, Inc.*, 219 F.3d 104, 107 (2d Cir. 2000). Mere conclusory allegations are insufficient to create a genuine issue of fact. "Summary judgment is proper when, after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir. 1993).

> In assessing when summary judgment should be granted, "'there must be more than a 'scintilla of evidence' in the non-movant's favor; there must be evidence upon which a fact-finder could reasonably find for the non-movant." *Heublein v. United States, supra, citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986). A court must always "resolve ambiguities and draw reasonable inferences against the moving party," *King v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); however, the non-movant may not relay upon "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. Id. at 12. Instead, "when the moving party has documented particular facts in the record, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) quoting Fed. R. Civ. P. 56(e). Unsupported allegations in the pleadings

cannot create a material issue of fact. *Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir. 2000).

*Authentic Fitness Corp. v. Dobbs Temporary Help Services, Inc. (In re Warnaco Group, Inc.)*, 2006 U.S. Dist. LEXIS 4263 (S.D.N.Y. 2006); *see also Sklaroff v. Rosenberg*, 125 F.Supp.2d 67, 71-72 (S.D.N.Y. 2000).

25. Summary judgment is to be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Lendino v. Trans Union Credit Information Co.*, 970 F.2d 1110 (2d Cir. 1992); *In re Finley, Kumble, Wagner, Heine, et al.*, 160 B.R. 882, 888 (Bankr. S.D.N.Y. 1993); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687, 694 (Bankr. S.D.N.Y. 1992).

26. A party moving for summary judgment bears the burden of proving that there are no triable issues of fact. *In re A.C.E. Elevator Co., Inc.*, 2009 WL 32255381 (Bankr. S.D.N.Y. 2009). A movant may meet its burden of proof by showing that little or no evidence supports the opposing party's case. *In re Lollipop, Inc.*, 205 B.R. 682, 687 (Bankr. E.D.N.Y. 1997).

27. There is no genuine issue for trial when the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). "If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the nonmovant, summary judgment is unavailable." *Mendelsohn v. Pappas (In re Pappas)*, 239 B.R. 448, 451-452 (Bankr. E.D.N.Y. 1999). *See also, e.g., Holt v. KMI-Continental, Inc.,* 95 F.3d 123, 128 (2d Cir. 1996).

28. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Matsushita*, *supra*, 475 U.S. at 586. Inferences drawn from the underlying facts will be viewed in the light most favorable to the nonmoving party.

8

*See Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 255 (1986); *Matsushita*, *supra*, 475 U.S. at 586. Factual assertions made are deemed admitted unless directly contradicted by an opposing statement. *See Pereira v. Private Brands, Inc. (In re Harvard Knitwear, Inc.)*, 193 B.R. 389, 396 (Bankr. E.D.N.Y. 1996) (citing cases).

29. "The court's responsibility is 'carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'" *In re Pappas, supra*, 239 B.R. at 451-452 (*quoting B.F. Goodrich v. Betkoski,* 99 F.3d 505, 522 (2d Cir. 1996) *quoting Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994). *See also, e.g.*, *In re Chateaugay Corp.,* 155 B.R. 636 (Bankr. S.D.N.Y. 1993)("The Court's role in ruling on a motion for summary judgment is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party" [citations omitted].)

30. The Court's task when considering a summary judgment motion is not to "weigh the evidence and determine the truth of the matter but [to] determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). The papers which may be reviewed by the Court in considering summary judgment motions include not only the pleadings, but also depositions and other examinations, answers to interrogatories, requests for admission and other discovery, and affidavits submitted in connection with the motion. *J.P. Morgan Financial Corp*., 124 B.R. 926; *In re Suburban Motor Freight, Inc.,* 124 B.R. at 992; *In re Wedtech Corp*., 165 B.R. 140 (Bankr. S.D.N.Y. 1994).

31. It is respectfully submitted that based upon the undisputed facts in this action, as set forth herein, and as more fully set forth in the 7056 Statement, and based upon the legal

arguments below, Debtor is entitled to summary judgment, as a matter of law, on all its defenses to the causes of action contained in Plaintiffs' Complaint.

## THE RELEASE IS BINDING UPON PLAINTIFFS

32. Based upon the clear and unambiguous wording of the Release, all claims in the Complaint as asserted against Debtor must be dismissed.

33. As set forth in the Release, see Exhibit "F", George:

1. hereby waives any and all claims to 321 Pulaski Street, Brooklyn, New York [Real Property] for the payment of the sum of Ten Thousand Five Hundred ($10,500) and 0/100 dollars…

2. further acknowledges that [sic] he executed the letter of July 25, 2014 in which he acknowledged that he previously received the sum of $200,000 from Nazrul Islam or his agents for said property…

3. agrees that this $10,500 is the final payment to satisfy any all claims against the new owner, 84 Elton LLC [Debtor] and prior owner Rodriguez 319 and 321 Corp.

34. The Release further directed that counsel for George, Nan K. Bedesi, Esq., be paid the sum of one thousand dollars ($1,000.00) for his "representation in this matter [the Release]." Furthermore, attorney Bedesi is the party that notarized the Release on behalf of George. Thus it is clear that George had independent counsel and representation with respect to the scope of the Release, and further that George received new value consideration for the execution of the Release.

35. The Release, as contained within the "four corners" of the document, expressly and unambiguously "waive[d] any all claims to 321 Pulaski Street, Brooklyn, New York." As a result, Plaintiffs have no claims or causes of action as against Debtor, under the express terms of the Release. Respectfully, this Court should grant Debtor summary judgment as against Plaintiffs.

36. In a case of similar facts, *In re Kenston Management Co.*, 137 B.R. 100, 103 (Bankr. E.D.N.Y. 1992), former Chief Judge Duberstein was presented the circumstance of a

debtor commencing an adversary proceeding seeking the turnover of certain monies against lessees; defendants moved for summary judgment based upon their reliance of a release executed by debtor pre-petition.

37. Judge Duberstein, based upon the clear and unambiguous language of the release there at hand, granted defendants motion for summary judgment. *Id*. at 113.

37. Specifically, the *Kenston* Court noted, with respect to the public policy issues supporting the validity and enforceability of a release, as sufficient grounds to grant defendants' motion for summary judgment:

> [W]hen, as here, an unambiguous release is signed knowingly and voluntarily in a commercial context by parties in a roughly equal bargaining position with access to counsel, the general rule is that the language of the release indicates the intent of the parties. *Locafrance U.S. Corp. v. Intermodal Systems Leasing, Inc., 558 F.2d 1113, 1114 (2d Cir. 1977)*; See *Appel v. Ford Motor Co., 111 A.D.2d 731, 732, 490 N.Y.S.2d 228, 229 (1985)*. The language of the release in the present case makes it clear that the Debtor has released the Defendants of all claims. If the release was intended to entail a condition precedent, then its wording should have so indicated. *Gerry's Gen. Contracting Serv., Inc. v. The Philippines, No. 86 Civ. 3266(PKL), 1987 WL 16369, at \*2 (S.D.N.Y. Aug. 21, 1987)*.
>
> Whereas this Court finds the release is clear and unambiguous on its face, the parol evidence rule excludes "extrinsic evidence of prior or contemporaneous negotiations between the parties offered to contradict or modify the terms of [the] writing." *Marine Midland Bank-Southern v. Thurlow, 53 N.Y.2d 381, 387, 442 N.Y.S.2d 417, 419, 425 N.E.2d 805 (1981)*; *See also G. S. C. Holding Corp. v. Cervoni, 69 A.D.2d 809, 810, 415 N.Y.S.2d 57, 59 (2d Dep't 1979)*.
>
> In addition, this Court recognizes that releases play a crucial role in the resolution of disputes. A release is a "jural act of high significance without which the settlement of disputes would be rendered all but impossible." *Mangini, 24 N.Y.2d at 563, 301 N.Y.S.2d at 513*. As such, a release "should never be converted into a starting point for renewed litigation except under circumstances and under rules which would render any other result a grave injustice." *Id.*

*Id.* at 111.

38. The *Kenston* Court, in addressing the fact that the Bankruptcy Court is a court of equity, but should refrain from imposing equity where the law and facts are clear, further held that:

> Equity should not intrude itself where knowledgeable parties contract and where they have not been overborne by actions of the other party. . . . the stability of the process and the public policy inherent in upholding the validity of freely negotiated contracts outweigh the call to do equity merely because the defendants find less [than they had hoped to find.] *Id.* at 868.

*Id*.

39. Similarly, Judge Wexler, in *Omaha Indem. Co. v. Johnson & Towers, Inc.*, 599 F.Supp 215 (E.D.N.Y. 1984) granted defendants' motion for summary judgment on all claims based upon the express language contained within an enforceable release. In the action, plaintiff asserted that it was entitled to money damages from the installation of substandard internal parts of engines that were damaged and destroyed as a result; defendants sought summary judgment as a result of a settlement agreement and a general release which extinguished all claims against defendants. *Id*. at 217-18.

40. The *Omaha* Court, addressing the language of the release as grounds to justify granting defendants' summary judgment motion, held "[i]t is axiomatic that where the language of an agreement is explicit and unambiguous the courts must give it its plain meaning. Paragraph 6 of the May 19th Stipulation is explicit and this Court declines to read in ambiguities or otherwise alter its plain meaning." *Id*. at 218. The *Omaha* Court further held that:

> Again, it is axiomatic that the courts may not go behind an agreement where its meaning is plain on its face. It is arguable that pre-printed forms do not reflect the full intent and purpose of the parties. Nevertheless, in this instance the Release was part of a negotiated settlement and was modified by the parties to reflect their agreement. It cannot be contended that the parties would modify the boilerplate language of the Release where needed in one respect and not in all respects. Where both parties were represented by counsel, bargained for the terms of settlement and release, and evidently could and did modify language to reflect the true terms of the agreement, they will be held to the plain meaning of their agreement.

*Id*. 219.

41.     Judge Wexler, in addressing the scope of a general release as a defense to a new law suit, held:

> in the more recent case of *Mt. Read Terminal, Inc. v. LeChase Construction Corp., 58 A.D.2d 1034, 396 N.Y.S.2d 959 (4th Dept. 1977)*, the Appellate Division held that the general release would be construed against the releasor, and that the release could be asserted as a defense to claims arising both before and after its execution.

*Id*. at 220.  Finally, the *Omaha* Court, in granting defendants' summary judgment motion, ruled:

> The Release in this case bars all claims against Johnson & Towers, those existing at the time of the Release, both known and unknown.  This is dictated by both the law and the language of the Release.  The result may seem harsh, but it is the result Mr. Singer bargained for.

*Id*.

42.     In the case at hand, George was represented by counsel during the negotiation and execution of the Release.  George received fair and new compensation in exchange for the Release.  The Release is plain on its face.  The Release contains a clear and unambiguous statement by George that all claims and causes of action related to Debtor's purchase of the Real Property were irrevocably waived and released.  Equity should not intrude upon the plain meaning of the Release, negotiated by the parties thereto, and executed with advice of counsel.  Accordingly, this honorable Court should grant Debtor's Motion in its entirety.

## **CONCLUSION**

43.     Debtor has proven, by uncontroverted documentary evidence, that: (i) its purchase of the Real Property was a good faith, arms-length transaction; (ii) Plaintiffs' by and through the Release, released and waived any and all causes of action against Debtor with respect to the Real Property; and (iii) Rodriguez has no standing to bring the action on behalf of the Rodriguez Estate, as Ivan Rodriguez is the administrator of same.

44.     It is respectfully submitted that, as set forth fully above, the facts and circumstances of this case mandate this Court granting summary judgment on behalf of Debtor as against Plaintiffs jointly and severally.

**WHEREFORE**, Debtor respectfully requests that its Motion for summary judgment be granted in its entirety on all of its defenses to the causes of action in the Complaint, and that the Notice of Pendency presently impairing the title of the Real Property be removed, together with such other and further relief as the Court deems to be just and proper.

Dated: Huntington, New York
         April 2, 2018

                                                         Rosen, Kantrow & Dillon, PLLC
                                                         *Counsel for Debtor*

By:    /s/ Avrum J. Rosen
         Avrum J. Rosen
         38 New Street
         Huntington, New York 11743
         631 423 8527
         arosen@rkdlawfirm.com